UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHAWN L. STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-CV-0072-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 14. Attorney Gary R. Penar represents Shawn L. Stevens (Plaintiff); Special Assistant United States Attorney Jeffrey Eric Staples represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

On March 20, 2013, Plaintiff protectively filed applications for disability insurance benefits and social security disability benefits, alleging disability since January 9, 2013, due to a car accident and brain injury. Tr. 201, 208, 232. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Marie Palachuk held a hearing on June 24, 2015, Tr. 36-74, and issued an unfavorable decision on July 17, 2015, Tr. 11-24. The Appeals Council denied review on December 16, 2016. Tr. 1-5. The ALJ's July 2015 decision thus became the final decision of the Commissioner, which is

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on February 15, 2017. ECF No. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on September 10, 1983, and was 29 years old on the alleged onset date, January 9, 2013. Tr. 201. He had completed one year of college. Tr. 233. Plaintiff's disability report indicates he stopped working on March 31, 2013, because he "was laid off." Tr. 232. He reported to a medical examiner he was terminated from this job for interpersonal problems. Tr. 383.

Plaintiff testified at the June 2015 administrative hearing that he has memory issues that prevent him from effectively grocery shopping, his forgetfulness restricts his ability to manage money, and he does not perform any chores in the home. Tr. 64-65. He stated he just sits in his chair most of the day. Tr. 65.

Plaintiff indicated he has to constantly change positions in his chair due to back pain. Tr. 67. As a result of the back pain, he is not able to tie his shoes and needs help with dressing his lower half. Tr. 67. He testified he would take scalding hot baths for 10 to 15 minutes, followed by a cold bath, three to four times a day, to treat the back pain. Tr. 66-67. Plaintiff stated he also experiences three to five migraine headaches per month that last between 15 minutes and all day. Tr. 68. He lies in a quiet, dark room to relieve the headache symptoms. Tr. 68.

Plaintiff testified he can only sit "a couple of minutes" before needing to change positions, can stand for two to three minutes before needing to sit or lie down, is able to walk only about 20 to 30 feet at one time, and is unable to lift a gallon of milk. Tr. 68-69.

Plaintiff has three children, ages seven, six and three at the time of the administrative hearing, and his live-in brother-in-law helped care for the children.

Tr. 65-66. Plaintiff stated his role with the children is primarily just playing with them. Tr. 66. He testified he does get up with his children in the morning and drive them about a half a block to their bus stop for school and is there to say goodnight to his children at night. Tr. 69.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen*

*v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupation. 20 C.F.R. § 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs which claimant can perform exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 17, 2015, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 9, 2013. Tr. 13. At step two, the ALJ determined Plaintiff had the following severe impairments: lower back pain with small disc protrusion, history of minor concussions, mood disorder not otherwise specified (NOS), and possible personality disorder. Tr. 13. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 14.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined he could perform light exertion level work with the following limitations: he is able to frequently crouch, crawl, kneel, and climb ramps and stairs and occasionally climb ladders, ropes and scaffolds, balance, and stoop; he is able to understand, remember and carry out simple, repetitive tasks and semiskilled tasks; he is able to maintain attention and concentration for two hour intervals

///

between regularly scheduled breaks; and he is limited to occasional interaction with the general public. Tr. 15.

At step four, the ALJ determined Plaintiff could not perform his past relevant work as a forklift operator or raw receiver for milk production at a dairy. Tr. 23. However, at step five, the ALJ determined that given Plaintiff's age, education, work experience and RFC, the Medical-Vocational Guidelines (Grids) directed a finding of "not disabled." Tr. 23-24. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 9, 2013, the alleged onset date, through the date of the ALJ's decision, July 17, 2015. Tr. 24

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in this case by (1) applying the Medical Vocational Guidelines (grids) to conclude Plaintiff was not disabled despite finding Plaintiff had multiple non-exertional limitations; (2) improperly rejecting the medical opinions of Plaintiff's treating physician, Jeffrey White, M.D., regarding Plaintiff's physical limitations; and (3) improperly weighing the medical evidence of record regarding Plaintiff's mental impairments. ECF No. 15 at 10-17.

**DISCUSSION**

**A.      Plaintiff's Symptom Testimony**

While Plaintiff has not challenged the ALJ's finding that Plaintiff's symptom testimony was not entirely credible, Tr. 16, 18, the Court finds the ALJ's adverse credibility determination significant in this case.

The ALJ indicated the following reasons for finding Plaintiff not fully credible: the objective medical evidence of record did not support the level of impairment alleged by Plaintiff (*Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir.

1991) (A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided that it is not the sole factor)); Plaintiff failed to engage in recommended physical therapy treatment (*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (noncompliance with medical care cast doubt on a claimant's subjective complaints)); Plaintiff's activities of daily living indicate he is not as limited as alleged (*Fair*, 885 F.2d at 603 (it is well-established that the nature of daily activities may be considered when evaluating credibility)); the record contains concerns over Plaintiff's opioid use (*Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (an ALJ may properly consider drug-seeking behavior)); Plaintiff's observed behavior of running and limping may have been indicative of an exaggeration of symptoms (*Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (finding that the ALJ's decision to discredit the claimant's statements was supported by the claimant's tendency to exaggerate)); and Plaintiff has not sought any type of treatment for his alleged psychological symptoms (*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (in assessing a claimant's credibility, an ALJ properly relies upon unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment)). Tr. 16-20.

The rationale provided by the ALJ is fully supported by the record, and the ALJ's determination that Plaintiff's statements were only partially credible is uncontested by Plaintiff. *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (issues not specifically and distinctly contested in a party's opening brief are considered waived). Since Plaintiff was properly found by the ALJ to be not entirely credible, the ALJ appropriately accorded little weight to Plaintiff's description of limitations and subjective complaints.

**B.     Jeffrey White, M.D.**

Plaintiff asserts the ALJ erred by failing to accord proper weight to the opinions of Dr. White. ECF No. 13 at 6-12.

1    Dr. White filled out DSHS WorkFirst Documentation Request Forms on
2 March 2013, April 2013, November 2013 and June 2014. Tr. 598-601, 623-632.
3 On March 13, 2013, Dr. White opined that Plaintiff had difficulty with walking
4 and sitting, was unable to sit for long periods of time, had trouble with his
5 memory, and had a moderate/severe cognitive impairment. Tr. 623-625. Dr.
6 White made identical findings on April 15, 2013. Tr. 626-628. On November 25,
7 2013, Dr. White determined that Plaintiff's left lower extremity and low back pain
8 prevented him from sitting for extended periods and limited his overall activity and
9 that his physical symptoms made all tasks very slow. Tr. 630-632. On June 17,
10 2014, Dr. White concluded Plaintiff's low back pain, leg dysfunction and bladder
11 dysfunction rendered him unable to work. Tr. 598-600.

The ALJ assigned "little weight" to Dr. White's opinions as "wholly unsupported" and contradicted by the evidence of record. Tr. 21. The Court agrees.

If the opinion of a treating or examining physician is not contradicted, it can only be rejected with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-1464 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

Here, the opinions of Dr. White were contradicted by other medical sources and evidence, including the medical expert and a state agency reviewing physician, medical imaging, Tr. 567-568, and the indication by Dr. Rosekrans that Plaintiff

was able to sit and stand and did not indicate he was in pain at any point during a four-hour psychological examination, Tr. 428. Therefore, the ALJ needed to only provide specific and legitimate reasons for rejecting Dr. White's opinions.

James M. Haynes, M.D., testified as a medical expert at the June 24, 2015 administrative hearing, Tr. 41-52, and was accorded significant weight by the ALJ, Tr. 20 (mislabeled by the ALJ as Dr. McKnight's hearing testimony). Dr. Haynes stated that Plaintiff's alleged back pain was unsupported by neurological abnormalities on physical exam and unsupported by imaging. Tr. 42. He did indicate that a lumbar MRI revealed a small central disk protrusion at L5-S1 and a mild disk at L4-5, neither impinging nerve roots, but stated that these findings were fairly common/appropriate for someone Plaintiff's age. Tr. 42. Dr. Haynes further stated that at the time of Plaintiff's motor vehicle accident, Plaintiff was able to take out a window and climb out of the vehicle, showing presence of mind and physical ability. Tr. 43. He testified that what Plaintiff was able to do at the scene of the accident was telling. Tr. 52. Dr. Haynes opined that Plaintiff would have no functional limitations. Tr. 43, 52.

The ALJ also accorded "significant weight" to the November 14, 2013, opinions of state agency reviewing physician Robert Hoskins, M.D. Tr. 21, 107-114. Dr. Hoskins opined that Plaintiff would be limited to light exertion level work with only frequent crawling and climbing of ramps and stairs and occasional stooping, balancing and climbing ladders, ropes and scaffolds. Tr. 109-110. Dr. Hoskins also noted that Plaintiff's alleged symptoms and limitations were unsupported by medical imaging. Tr. 21, 107.

The ALJ also found the August 26, 2013, psychological consultative examination completed by Frank Rosekrans, Ph.D, Tr. 427-431, significant with respect to Plaintiff's physical condition. Tr. 21-22. While Dr. Rosekrans is a psychologist and not a medical doctor, *see Bollinger v. Barnhart*, 178 F. App'x 745, 746 n. 1 (9th Cir. 2006) (holding that an ALJ properly discounted a

psychologist's opinion regarding physical limitations because it was beyond the psychologist's expertise), Dr. Rosekrans did not opine on the existence or extent of any alleged physical limitations. Dr. Rosekrans merely observed that Plaintiff was able to sit, stand, and walk without difficulty and that Plaintiff did not indicate he was in pain at any point during his four-hour psychological examination. Tr. 14, 19, 428. Dr. Rosekrans' observations regarding Plaintiff's physical functioning during the examination is compelling evidence contradicting the extreme physical limitations noted by Dr. White.

On April 23, 2014, Plaintiff underwent an MRI of the lumbar spine. Tr. 567-568. The MRI revealed a small central posterior disc herniation at L5-S1, without nerve compression or displacement; a very mild posterior disc bulge at L4-5; and a mild disc desiccation and right posterolateral disc bulge at T1-L1. Tr. 567-568. As indicated above, these results were reported by Dr. Haynes as fairly common/appropriate for someone Plaintiff's age. Tr. 42.

Based on the foregoing, there is no objective evidence of Plaintiff's inability to perform light exertion level work with the minimal nonexertional limitations set out by the ALJ. Tr. 15. Accordingly, as concluded by the ALJ, the evidence of record does not support the significant limitations assessed by Dr. White on the DSHS WorkFirst Documentation Request Forms. The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial record evidence, for discounted Dr. White's reports.

C.     **Mental Limitations**

Plaintiff next contends that the ALJ erred by improperly weighing the evidence of Plaintiff's mental impairments. ECF No. 13 at 13-20. Plaintiff specifically argues that the ALJ erred by according little weight to the medical opinion of examiner James C. Lontz, Ph.D., and instead giving weight to the opinions of Dr. Rosekrans, Dr. McKnight, Michael L. Brown, Ph.D., and Eugene Kester, M.D. *Id.*

Dr. Lontz evaluated Plaintiff on May 30, 2013. Tr. 383-390. Plaintiff tested in the low average to average range on all testing, with the exception of performing in the borderline impaired range on a test that provides evidence of whether word fluency and word finding problems exist. Tr. 385-388. The results of the MMPI-II indicated "the examinee engaged in a cry for help with possible exaggeration of symptoms." Tr. 388. Dr. Lontz opined that Plaintiff could return to work/school but would need to register with Student Services, Special Needs, Disability Services, or a similar entity for accommodations due to disability and recommended Plaintiff take short breaks (15 minutes every 60-90 minutes) during the work or school day. Tr. 389.

The opinions of Dr. Lontz are contradicted by other medical sources, including the medical expert, state agency reviewing physicians, and Dr. Rosekrans. Therefore, the ALJ needed to only provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Lontz's opinions. *Andrews*, 53 F.3d at 1041.

Here, the ALJ assigned "little weight" to Dr. Lontz's opinions because they were internally inconsistent (while Dr. Lontz concluded on exam that Plaintiff had memory deficits, Plaintiff was able to recall, with detail, his personal history) and not supported by the objective evidence of record. Tr. 22.

With respect to the ALJ's determination that Dr. Lontz's opinion is entitled to little weight because his examination findings were inconsistent with Plaintiff's ability to give a detailed personal history, it is well-settled that an ALJ must not substitute her medical judgment for that of a physician. *See e.g. Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Although the ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, she is not free to set her own expertise against that of a physician. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (finding it is improper for an ALJ to act as her own medical expert); *McBrayer v. Secretary of*

*Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983). Dr. Lontz's opinion that Plaintiff's memory was within the low average to average range is based on objective testing. Tr. 386. By finding that Plaintiff's ability to recount his personal history contradicted the results of Dr. Lontz's objective testing, the ALJ impermissibly formed medical conclusions without relying on Dr. Lontz's objective findings.

Nevertheless, Plaintiff has not satisfied his burden of establishing that the foregoing error "alters the outcome of the case," and thus the Court deems it a harmless error. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012) (court cannot reverse ALJ's decision based on harmless error and claimant has burden of showing that error is harmful). As discussed below, the Court finds the ALJ's opinion regarding Plaintiff mental functioning is well supported.

Dr. Rosekrans examined Plaintiff on August 26, 2013, Tr. 427-431, and the ALJ gave significant weight to his opinions. Tr. 21. Dr. Rosekrans indicated that although there is usually improvement/recovery over time after a brain injury, Plaintiff's scores on cognitive functioning were much lower than the results of the previous testing with Dr. Lontz, with "General Memory" severely impaired. Tr. 430-431. Dr. Rosekrans did not diagnose cognitive or memory deficit due to the inconsistencies between the two examinations. Tr. 431.

On September 6, 2013, Dr. Brown reviewed the record and opined Plaintiff had four moderate limitations in categories of mental functioning but was also capable of understanding, remembering, and following simple, repetitive instructions and tasks and would do best on less complicated tasks that do not require a high level of cooperation with others. Tr. 85-87. Dr. Brown noted the abnormality of Plaintiff doing significantly worse on his later cognitive examination and suggested a possible exaggeration of symptoms. Tr. 87. On November 13, 2013, Dr. Kester reviewed the record and found that Plaintiff was able to understand and remember simple and semi-skilled tasks; to maintain

concentration, persistence and pace for simple and semi-skilled tasks; and to work in a position where he avoids frequent contact with the public. Tr. 111-112.

Dr. McKnight testified as a medical expert at the June 24, 2015 administrative hearing and was accorded significant weight by the ALJ. Tr. 20-21, 53-64. Dr. McKnight stated that brains repair themselves almost immediately following an acute injury; therefore, absent an additional factor like drug abuse or something not caused by the acute injury (e.g. multiple sclerosis) it did not make sense for the results on exam to show lower performance from the time of Dr. Lontz's examination to the time of Dr. Rosekrans' examination. Tr. 62. Dr. McKnight noted that the "cry for help" reported by Dr. Lontz has an element of malingering attached to it because the person is saying "help me," "give me," "assist me" and "I'm over reporting the difficulty." Tr. 58. He concluded there was no basis for the inconsistent scores on exam and agreed with Dr. Rosekrans that diagnosing a cognitive disorder was not supported by the record. Tr. 59-60.

Based on the foregoing, the weight of the medical evidence of record does not support Dr. Lontz's finding that Plaintiff needed to register for accommodations or his recommendation that Plaintiff take short breaks during the work or school day. Consequently, the Court finds the ALJ properly weighed the medical evidence of Plaintiff's mental impairments.

**D. Step Five**

Plaintiff contends that the ALJ erred by relying on the grids to find Plaintiff not disabled in this case. ECF No. 13 at 3-6.

After a claimant has established a prima facie case of disability by demonstrating he cannot return to his former employment, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite his identified limitations. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). The ALJ can satisfy this burden
///

by either (1) applying the grids or (2) taking the testimony of a vocational expert. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).

The grids are an administrative tool the Commissioner may rely on when considering claimants with substantially uniform levels of impairment. *Burkhart*, 856 F.2d at 1340 (citing *Derosiers v. Secretary of Health and Human Serv.*, 846 F.2d 573, 578 (9th Cir. 1988). However, the use of the grids is not always proper. If a claimant has nonexertional limitations[1] that significantly limit his range of work, the use of the grids in determining disability is inappropriate. *Bates v. Sullivan*, 894 F.2d 1059 (9th Cir. 1990) overruled on other grounds *Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991). In such instances, a vocational expert must be called to identify jobs that match the abilities of the claimant, given his limitations. *See e.g. Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). Nevertheless, if an ALJ determines that a claimant's nonexertional limitations do not significantly affect his ability to perform a full range of work, then use of the grids is appropriate. *Tacket v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

The Court has determined above that the ALJ did not err with respect to Plaintiff's physical and mental RFC. Accordingly, as concluded by the ALJ, Plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled light work." Tr. 24. As noted above, if non-exertional limitations "significantly" affect a claimant's ability to perform work, then vocational expert testimony is required. *Bates*, 894 F.2d at 1059. However, because the ALJ in this case found that claimant's nonexertional limitations were "minimal" and thus not significant, the use of the grids by the ALJ was entirely appropriate. The ALJ properly concluded that, based on Plaintiff's RFC and

---

[1]Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an individual's physical strength." SSR 96-8; *see also* 20 C.F.R. Pt. 416.969a; *Derosiers*, 846 F.2d at 579.

considering his age, education and work experience, a finding of "not disabled" was directed under the framework of grid rule 202.20. Tr. 24.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED March 6, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE